UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD GLASS, | No. 2:20-cv-1123 DJC CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CDCR, et al., | |
| Defendants. | |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. During the relevant time frame, defendants were employees of the California Department of Corrections and Rehabilitation (CDCR) at California State Prison, Sacramento (CSP-Sac.). This action proceeds on the following claims:

1. Claims arising under the Eighth Amendment against defendants Oania, Musgrave, and Temple for either causing plaintiff not to receive or denying plaintiff any food for a period of 4 days.

2. Claims arising under the First Amendment based upon retaliation for protected conduct against defendants Oania, Musgrave, and Temple.

Defendants Oania, Musgrave, and Temple have filed a motion for summary judgment which is now before the court.

/////

1

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

/////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Allegations

In his first amended complaint (ECF No. 16), signed under the penalty of perjury, plaintiff alleges in relevant part as follows:

1. Plaintiff is Jewish. CDCR provides kosher diets to inmates who meet certain criteria. Plaintiff obtained permission from a rabbi at CSP-Sac. to receive kosher meals.

2. Sometime in 2016, plaintiff received permission from the rabbi and an imam to have his name placed on the "Ramadan list." Plaintiff had his name placed on the list so that he could attend Ramadan chapel services, and he intended to fast, but wanted to continue receiving kosher meals.

3. On June 6, 2016, plaintiff was informed by defendants Oania and Musgrave that he could not receive kosher meals and be on the "Ramadan list." Plaintiff declined to either

surrender his kosher diet card or have his name removed from the "Ramadan list," telling Oania and Musgrave that they had no authority to require him to make a choice as they were not clergy.

4. Between June 6 and June 10, 2016, plaintiff's name did not appear on the kosher diet list, and he was denied "any and all food." Id. at 6. As result, plaintiff did not eat those days. Defendants Oania and Musgrave admitted to plaintiff that they had plaintiff's name removed from the kosher diet list.

5. Between June 7 and June 10, 2016, while being escorted to chapel services, plaintiff informed Sgt. Temple that Oania and Musgrave had plaintiff's name removed from the kosher meal list, and that they were denying plaintiff any food. Sgt. Temple refused plaintiff's requests to remedy the situation and told plaintiff he did not care if plaintiff starved to death.

6. Plaintiff resumed receiving kosher meals after the rabbi spoke with Oania and Musgrave.

7. On June 24, 2016, plaintiff filed an inmate grievance against Oania and Musgrave.

8. On July 12, 2016, plaintiff was placed in a holding cell pending transfer to administrative segregation after being attacked by another inmate. Defendant Temple ordered Oania and Musgrave to collect and inventory all of plaintiff's property in his cell. Defendants Oania and Musgrave delivered plaintiff's property to plaintiff in the holding cell and provided plaintiff with a list of all the items they allegedly recovered. Not included on this list were plaintiff's Fila shoes, prayer oils, socks and "numerous other items." Plaintiff informed Oania and Musgrave of this. Despite this, plaintiff signed a form indicating he had received all the property conditioned with "I reserve the right to appeal any missing property." ECF No. 46-10 at 17. Defendants Oania and Musgrave admitted to plaintiff that they had taken some of plaintiff's property because he filed a grievance against them.

9. When plaintiff arrived in administrative segregation, Oania ordered that a watch plaintiff was wearing be confiscated. Defendant Oania told plaintiff the watch would be put into one of his property boxes. When plaintiff got his property back from storage, the watch was not included.

/////

4

10. Defendant Temple admitted to plaintiff that he, Oania, and Musgrave were in possession of several items belonging to plaintiff because of his grievance and that he was present when the inventory and retrieval occurred.

Plaintiff makes additional and sometimes contradictory allegations of fact in his opposition to defendants' motion for summary judgment, but the opposition is not verified under the penalty of perjury. To the extent the allegations are not supported by admissible evidence, those allegations are not considered.

III. Denial of Food

A. Sgt. Temple

Defendants argue that plaintiff did not utilize the grievance process with respect to his claim that he was denied food by defendant Sgt. Temple. Under 42 U.S.C. § 1997(e)(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement demands "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). To "properly exhaust" administrative remedies, the prisoner must generally comply with the correctional entity's procedural rules throughout the administrative process. Jones v. Bock, 549 U.S. 199, 218 (2006); Woodford, 548 U.S. at 90-91.

With respect to the specificity required in a grievance, the court generally defers to the requirements found in the applicable grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Under the law in effect at the time of the events at issue, CDCR had an administrative process that provided inmates the right to grieve or appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 CCR § 3084.1 (2016).[1] As for the content of a grievance, inmates were instructed to (1) "list all

/////

---

[1] This regulation was repealed on June 1, 2020.

5

staff member(s) involved and . . . describe their involvement in the issue," and (2) "state all facts known and available . . . regarding the issue being appealed. . ." Id. at § 3084.2(a)(3) & (4).[2]

Plaintiff filed one grievance as to his being denied kosher food and included allegations against Oania and Musgrave. ECF No. 46-6 at 33-45. Plaintiff did not include any allegations against Sgt. Temple in the grievance. Thus, there was nothing in the grievance presented which would have put CDCR on notice of defendant Temple's allegedly unlawful conduct. Plaintiff asserts that he did not know Sgt. Temple's name at the time plaintiff sought his help and when he filed his grievance. That might make a difference had plaintiff included his allegations against Temple and indicated that he was not aware of the offending officer's identity. Failure to include the allegations at all, however, means that plaintiff did not properly exhaust his administrative remedies.

For these reasons, defendant Sgt. Temple is entitled to summary judgment for failure to exhaust available administrative remedies as to plaintiff's Eighth Amendment claim against him relating to the alleged denial of food.

### B. Officers Musgrave and Oania

#### 1. Law Related to Denial of Food

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Id. To show a violation of the Eighth Amendment premised upon a denial of food, a prisoner must show (1) an act or omission of a prison official resulted in the denial of "the minimal civilized measure of life's necessities," id. at 834 (internal quotation omitted), and (2) the denial was the result of at least deliberate indifference to a substantial risk that the deprivation would occur. Id. at 847. In Simmons v. Cook, 154 F.3d 805, 807-09 (8th Cir. 1998), the Eighth Circuit found an Eighth Amendment violation where inmates were deprived of four consecutive meals. In Dearman v. Woodson, 429 F.2d 1288, 1289 (10th Cir.

---

[2] These regulations were also repealed on June 1, 2020.

1970), the Tenth Circuit found that an allegation that plaintiff had been denied food for 50 1/2 hours was sufficient to state a claim under the Eighth Amendment.

Generally speaking, the Eighth Amendment requires that inmates receive "food that is adequate to maintain health." LeMaire v. Mass, 12 F.3d 1444, 1456 (9th Cir. 1993). Lack of access to a specific religious diet does not amount to cruel and unusual punishment under the Eighth Amendment. Buskirk v. Johnson, No. CV 21-9065-MWF (JEM), 2023 WL 6851734, at *4 (C.D. Cal. May 23, 2023) citing Monson v. Steward, No. 2:15-cv-00513-PK, 2017 WL 2882709, at *8 (D. Or. July 6, 2017) (denial of kosher diet is not unnecessary and wanton infliction of pain); White v. Krantz, No. 1:20-cv-00892-NONE-GSA-PC, 2021 WL 4206545, at *8 (E.D. Cal. Sep. 16, 2021) (plaintiff failed to state Eighth Amendment claim based on allegations that he was denied a kosher diet for 50 days and occasionally was not provided a sack lunch after religious fasts); Burton v. Clark, No. 1:09-cv-00061-DLB (PC), 2009 WL 3254897, at *4 (E.D. Cal. Oct. 8, 2009) (plaintiff failed to state an Eighth Amendment claim based on allegations he received food that did not conform with his religious beliefs).

### 2. Analysis

#### a. Denial of "Minimal Civilized Measure of Life's Necessities"

Plaintiff alleges that he was denied food between June 6 and June 10, 2016. In his grievance concerning the issue, plaintiff indicated the dates were June 7 through June 9, (ECF No. 46-6 at 35-37) and plaintiff does not attempt to explain the difference. Defendants present evidence suggesting plaintiff's deprivation of food was for a shorter time than alleged by plaintiff, but the court must view all evidence in the light most favorable to plaintiff.[3] Plaintiff presents sufficient evidence to create a genuine issue of material fact as to whether being deprived of food

---

[3] Defendants argue that plaintiff has not alleged sufficient actual injury because of his being denied food to state a claim under the Eighth Amendment (e.g. plaintiff does not allege he became physically ill because of being denied food). But defendants fail to point to anything suggesting that plaintiff's allegation that he was denied food for the amount of time required to state a claim under the Eighth Amendment must be accompanied by a recitation of the physical injuries, if any, suffered. While the degree of injury suffered would be appropriate in considering a remedy, it does not appear to be relevant in terms of plaintiff stating a claim upon which he can proceed under the Eighth Amendment.

amounted to the denial of "the minimal civilized measure of life's necessities." See Simmons, 154 F.3d at 807-09; Dearman, 429 F.2d at 1289.

### b. Deliberate Indifference

Defendants argue that plaintiff's denial of food was not a result of at least their deliberate indifference to plaintiff's Eight Amendment rights. In their declarations, ECF Nos. 46-9 and 11, defendants Musgrave and Oania indicate in relevant part as follows:

1. All inmates at CSP-Sac. generally receive three meals a day.

2. In June of 2016, Jewish inmates could participate in the Jewish Kosher Diet Program (JKDP) at CSP-Sac. as determined by a rabbi. The rabbi was responsible for determining an inmate's entry into the JKDP and determining Jewish inmates' compliance violations. Once approved for JKDP, an inmate received a Religious Diet Card.

3. Reports of an alleged inmate Religious Diet Program Agreement compliance violation were to be sent to the rabbi, who would then consult with the inmate and make the final determination of continuing eligibility.

4. Under the religious diet program rules, an approved inmate could not purchase or consume any food items that were not part of that inmate's religious diet, and could not obtain a second meal, either regular or religious.

5. Pursuant to California prison regulations, any staff member could report an incident of an alleged inmate Religious Diet Program Agreement compliance violation.

6. Rabbi O. David was the person in charge of the JKDP at CSP-Sacramento in June of 2016.

7. While on duty in Facility C, Unit 7, on June 7, 2016, at approximately 8:20 p.m., Musgrave observed inmates who were distributing the Ramadan meals deliver two trays to cell number 102, which was occupied by inmates Glass and Wright. Musgrave recorded these observations on a CDC 128 A form, placed it in inmate Glass's Central File, and informed Rabbi David. Musgrave was aware plaintiff was enrolled in the JKDP which required that plaintiff eat only kosher meals. Musgrave took no other action with respect to plaintiff receiving any meals during the relevant period of time.

      8. Musgrave never instructed kitchen staff to withhold plaintiff's kosher meals.

      9. Musgrave recalls plaintiff telling him during the week of June 6, 2016, that he had been removed from the kosher program.

      10. On June 6, 2016, Oania was aware plaintiff was enrolled in the JKDP. That week, Oania observed plaintiff's receipt of both kosher and halal (Ramadan) meals two days in a row. In response, Oania e-mailed Rabbi David relaying what he had seen and asking if plaintiff was authorized to receive both meals. Rabbi David indicated plaintiff could not receive both meals. After this email, Oania noticed that plaintiff's name was no longer on the kosher meal list. Officer Oania took no further action relevant to the matters at hand.

      11. Musgrave and Oania did not deny plaintiff all food.

Defendants also provide evidence confirming that plaintiff was approved for the JKDP on May 10, 2015. ECF No. 46-16 at 4.

Construing the facts in the light most favorable to plaintiff, the court accepts that Oania and Musgrave were the cause of plaintiff's removal from the kosher meal list. However, there is no evidence that they intended that plaintiff receive no food at all, that they were at least deliberately indifferent to plaintiff's receiving food, nor that they stopped plaintiff from receiving food. Plaintiff does not allege that he ever informed Oania or Musgrave that he was not receiving any food, nor does he allege that he informed anyone other than Sgt. Temple that he was not receiving any food. Because there is no genuine issue of material fact as to whether defendants Oania or Musgrave were deliberately indifferent to plaintiff not receiving any food at all, they are entitled to summary judgment as to plaintiff's Eighth Amendment claims.

IV. Retaliation

    A. Law

Prison officials generally cannot retaliate against inmates for exercising First Amendment rights. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). Because a prisoner's First Amendment rights are necessarily curtailed, however, a successful retaliation claim requires a finding that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Id. at 532.

1  The plaintiff bears the burden of pleading and proving the absence of legitimate correctional

2  goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

3        Also, to state a claim for retaliation, plaintiff must point to facts indicating a causal

4  connection between the adverse action and the protected conduct. Watison v. Carter, 668 F.3d

5  1108, 1114 (9th Cir. 2012).

6        B.   Evidence in Addition to Plaintiff's Verified Allegations

7        In his declaration, ECF No. 46-9, defendant Musgrave indicates as follows:

8        1. On July 12, 2016, Sgt. Temple ordered Musgrave and Oania to inventory and package

9  items from the cell occupied by plaintiff and inmate Wright because plaintiff was in a holding cell

10  pending transfer to administrative segregation and inmate Wright was at a hospital. According to

11  Musgrave, when an inmate is reassigned from their cell, even temporarily, "we, as custody staff

12  ... are required to inventory and package their personal property for safekeeping."

13        2. As to the configuration of the cell, Musgrave indicates:

> Both [plaintiff and inmate] Wright had medical chronos for lower bunks, and therefore [plaintiff's] bed was on one side of the cell while Wright's was on the other side. Above each bed is a metal shelving unit where inmates can place some of their personal property. The cell has only one desk. Aside from the metal shelving unit, some personal items may not be confined to one discrete area that would permit the officer to determine to whom those items belong. For example, a pair of sneakers could be anywhere in the cell making it difficult to determine to which inmate those sneakers belong.

20        3. Defendant Oania collected and inventoried what he thought was plaintiff's personal

21  property using CDCR Form 1083, Inmate Property Inventory. Defendant Musgrave then

22  presented the completed 1083 form along with plaintiff's property to plaintiff who was in a

23  holding cell to confirm all plaintiff's property was accounted for.

24        4. Musgrave recalls specifically that plaintiff asked to see if three or four items were in

25  the boxes containing plaintiff's property. Musgrave opened the boxes for plaintiff. Plaintiff

26  confirmed the items were in the boxes.

27        5. After plaintiff reviewed the contents of the boxes, he signed the 1083 form affirming

28  that the property identified on the form was all the property plaintiff was permitted to have. ECF

1   No. 46-10 at 17.  At that point, Musgrave and Oania took plaintiff's property to a storage
2   room where the facility property officer took control of plaintiff's property.  Musgrave had no
3   further contact with plaintiff's property.

4         6. Musgrave did not take any of plaintiff's property.

5       In his declaration, ECF No. 46-11, defendant Oania avers that he does not specifically
6   recall collecting plaintiff's property but that he never misappropriated any of plaintiff's property.

7       In his declaration, ECF No. 46-13, Sgt. Temple avers that he does not recall being
8   involved in the inventory of plaintiff's property.  While plaintiff does not allege defendant
9   Temple's direct involvement in the inventory, plaintiff does allege that Temple admitted to him
10  that he, Oania, and Musgrave were in possession of several items belonging to plaintiff because
11  of his grievance and that he was present when the inventory and retrieval occurred.  ECF No. 16
12  at 8.

13      Plaintiff provides an affidavit from inmate Wright, ECF No. 61 at 66, who indicates that
14  he ended up with plaintiff's shoes, extension cord, a pair of socks, and a beanie.  When Wright
15  informed Musgrave and Oania of this, they told Wright, "they had no respect for [plaintiff] or his
16  property because [plaintiff] filed a [grievance] accusing us of . . . stopping his . . . kosher meals."
17  It is not clear what became of the property.

18      C. <u>Analysis</u>

19      Construing the evidence in the light most favorable to plaintiff, the court finds there is a
20  genuine issue of material fact as to whether some of plaintiff's property was taken by Musgrave
21  and Oania and then retained by Musgrave, Oania, and Temple in retaliation for plaintiff filing a
22  grievance against Musgrave and Oania.  Defendants do not point to anything establishing that all
23  of the property they removed from plaintiff's cell and plaintiff's watch were returned to plaintiff,
24  nor do they account for the missing property other than the property that ended up with inmate
25  Wright.  With respect to that property, plaintiff points to evidence indicating that Wright
26  informed Oania and Musgrave that Wright had some of plaintiff's property, but Oania and
27  Musgrave appeared, at best, indifferent because plaintiff had filed a grievance against them.
28  Plaintiff also alleges that all of the defendants admitted to him that some of his property was

taken or retained because he filed a grievance against Oania and Musgrave.[4]  For these reasons defendants are not entitled to summary judgment as to plaintiff's First Amendment retaliation claim.

V. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 46) be granted with respect to plaintiff's remaining Eighth Amendment claims, and

2. Denied with respect to plaintiff's remaining First Amendment claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 28, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
glas1123.msj

---

[4] Plaintiff's allegations that the defendants admitted that they misappropriated some of plaintiff's personal property in retaliation for his filing of a grievance is certainly suspect, but plaintiff's credibility on this point is for a factfinder to assess.

12